UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

MARYLAND-NATIONAL CAPITAL
PARK AND PLANNING COMMISSION;
THE CITY OF TAKOMA PARK,
MARYLAND,
   *Plaintiffs-Appellants,*

    v.

TIMOTHY B. BOYLE; JEFFREY L.
PAULEY; MOBILE DATA
TECHNOLOGIES, LLC; INTERNATIONAL
MANAGEMENT CONSULTING,
INCORPORATED,
   *Defendants-Appellees,*

    and

DATALUX CORPORATION; JOHN AND
JANE DOE AGENTS AND EMPLOYEES OF
DEFENDANT ENTITIES,
   *Defendants.*

No. 02-1693

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Alexander Harvey II, Senior District Judge.
(CA-01-3561-H)

Argued: April 4, 2003

Decided: April 16, 2003

Before WIDENER, WILKINSON, and MOTZ, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Adrian Robert Gardner, General Counsel, THE MARYLAND-NATIONAL CAPITAL PARK AND PLANNING COMMISSION, Riverdale, Maryland, for Appellants. Timothy Francis Maloney, JOSEPH, GREENWALD & LAAKE, P.A., Greenbelt, Maryland; Dana Glynn Theriot, CARR, MORRIS & GRAEFF, P.C., Washington, D.C., for Appellees. **ON BRIEF:** William C. Dickerson, Associate General Counsel, THE MARYLAND-NATIONAL CAPITAL PARK AND PLANNING COMMISSION, Riverdale, Maryland, for Appellants. Cary J. Hansel, JOSEPH, GREENWALD & LAAKE, P.A., Greenbelt, Maryland; Lawrence E. Carr, III, Stephen D. Graeff, CARR, MORRIS & GRAEFF, P.C., Washington, D.C., for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Maryland-National Capital Park and Planning Commission and the City of Takoma Park, Maryland appeal the dismissal of their claims brought under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.A. §§ 1961-1968 (West 2000 & Supp. 2003). The district court dismissed the claims for failure to allege a pattern of racketeering activity as prohibited under 18 U.S.C.A. § 1962 (West 2000). We affirm.

### I.

Maryland-National Capital Park and Planning Commission (the "Commission") and the City of Takoma Park, Maryland, filed a complaint in November 2001 alleging that defendants Timothy B. Boyle, Jeffrey L. Pauley, Mobile Data Technologies, LLC ("MDT"), Datalux

Corporation ("Datalux"), and International Management Consulting, Inc. ("IMCI"), violated state and federal law in connection with a project to place laptop computers in police vehicles (the "project"). Boyle and Pauley were both previously employed with the Commission and played a leading role in the alleged scheme.

The Commission is a bi-county government agency created by the Maryland General Assembly. The Commission functions as a public body corporate and can sue and be sued in this capacity. It also has legal authority to enter into contracts. In keeping with its responsibilities, the Commission established the County Division of the Maryland-National Capitol Park Police (the "Department") to prevent crime; apprehend criminals; and enforce the criminal laws, motor vehicle laws, and park regulations in and around the Commission's property in Montgomery county, Maryland.

In 1995, Department Commander Donald A. Deering, who was Boyle's and Pauley's superior at the time, authorized pursuit of a United States Department of Justice grant to fund the placement of laptop computers in police vehicles. After successfully obtaining the federal grant, the Department put out a request for bids for "turnkey" projects. In April 1997, the Department awarded IMCI a contract worth $748,829.94 for design and implementation of an "Enterprise Digital Network for a Computer Aided Dispatch System." The contract stated that payment of the contract price would be made in stages, with the final twenty percent due at completion of the project. Failure to complete all work within 220 days after the contract date would result in assessment of liquidated damages against IMCI.

Upon choosing IMCI as the chief contractor for the project, the Department also assigned Boyle and Pauley responsibility for managing and implementing the project. These responsibilities included the procurement of various technology products and the administration of project-related contracts.

In discharging these responsibilities, Boyle authorized final payment of $149,765.99 to IMCI in November 1998, even though Boyle allegedly knew that IMCI had not completed its work under the contract and that this payment violated the terms of the contract. The complaint alleges that Boyle made the improper payment in order to

further his private business relationship with IMCI. At roughly the same time, in early November 1998, Boyle and Pauley also organized defendant MDT as a limited liability company, wholly owned by Boyle and Pauley, for the purpose of obtaining commissions from various vendors supplying technology and computer services to the Department and other law enforcement agencies. That same month, Boyle and Pauley organized the Mobile Data Users Group (MDUG), which was run and promoted by Boyle and Pauley using Commission time and resources and which ostensibly operated as a forum for law enforcement representatives to share information and ideas on the application of new technology in law enforcement. The plaintiffs allege that Boyle and Pauley used MDUG to surreptitiously promote their own business interests, particularly those associated with MDT and its "preferred" vendors, with other police departments and law enforcement agencies seeking to develop mobile technology platforms.

In January 1999, the Commission issued a request for pricing by vendors of mobile equipment to be used for the project. Boyle and Pauley allegedly drafted specifications for the requested equipment in a manner that mirrored the specifications of equipment supplied by defendant Datalux. The plaintiffs also allege that Boyle heavily promoted Datalux to the Commission and others. In March 1999, the Commission acted on these recommendations and ordered fifteen Datalux computers. Shortly thereafter, MDT entered into an agreement with Datalux whereby MDT agreed to serve as a sales representative for Datalux. Under the agreement, MDT would receive commissions for any equipment sold by Datalux to customers recruited by MDT. Takoma Park alleges that MDT received such a commission after the city purchased Datalux computers based on recommendations from MDT.

In April 2000, after receiving information advising it of "irregularities" relating to the procurement activities undertaken by Boyle and Pauley in connection with the project, the Commission initiated an investigation of the two police officers. The following month, in May 2000, Boyle and Pauley resigned.

The Commission, along with Takoma Park, subsequently filed the underlying complaint in this action in November 2001. In their com-

plaint, the plaintiffs allege state law claims for fraud, breach of contract, unjust enrichment, civil conspiracy, negligence, and conversion. In addition, the complaint asserts two federal claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.A. §§ 1961-1968. Specifically, count I of the complaint alleges that MDT was formed as a RICO "enterprise" within the meaning of 18 U.S.C.A. §§ 1962 and 1961 (West 2000 & Supp. 2003) with the objective of using the influence and position of Boyle and Pauley with the Commission to secure unauthorized compensation from the Commission, improperly secure contracts and bids, insulate certain vendors from scrutiny, and generate financial benefits for Boyle, Pauley and MDT. Count II alleges that MDT, IMCI, and Datalux formed a similar RICO "enterprise" within the meaning of 18 U.S.C.A. §§ 1962 and 1961 to use the influence and positions of Boyle and Pauley with the Commission to benefit the participants in the enterprise in the same manner as in the first count. Both RICO counts allege mail and wire fraud as predicate acts.

## II.

The district court dismissed the two RICO counts as to all defendants on the ground that the plaintiffs had "failed . . . to allege the existence of a pattern of racketeering activity which would permit their RICO claims to go forward." *See Maryland-National Capital Park and Planning Comm'n v. Boyle*, 203 F. Supp. 2d 468, 477 (D. Md. 2002).* The district court reasoned that Boyle and Pauley did nothing more than "violate[ ] their fiduciary responsibilities as employees by acting contrary to the best interests of the Commission, their employer." *Id*. Given that this "conflict of interest arising in an employment context" provided "the essential basis for the RICO claims asserted in the complaint," the district court concluded that the plaintiffs had failed to make the requisite showing necessary to sustain a RICO cause of action. *Id.*

The court further reasoned that even if the fraudulent scheme engaged in by the defendants could be characterized as racketeering activity, the complaint failed to allege facts showing that such activity

---

*The district court also dismissed without prejudice plaintiffs' state law claims.

met the continuity requirement necessary to make out a pattern of racketeering activity. *Id.* at 477-78. The district court noted that "[m]issing from the complaint and necessary for pleading a viable RICO claim are allegations of widespread fraud and continuing racketeering activity." *Id.* at 477. In short, the court concluded that the claims advanced by the plaintiffs amounted to nothing more than "ordinary or garden variety fraud claims." *Id.*

## III.

We have reviewed the record, briefs, and applicable law and have considered the oral arguments of the parties, and conclude that the district court was correct. Accordingly, we affirm on the basis of the district court's well-reasoned opinion. *See Maryland-National Capital Park and Planning Comm'n v. Boyle*, 203 F. Supp. 2d 468 (D. Md. 2002).

*AFFIRMED*